Travelers Property Casualty Company of America v. USA Container Co., Inc. Good morning. I approach the Court, John M. Bowen, Skank Price, Smith and King, on behalf of Travelers. The decision by the District Court essentially changed the fundamental nature of the... Did you want rebuttal time? Oh yes, I'm sorry. Three minutes? Three minutes, okay, yes. Thank you. Changed the nature of the comprehensive general liability insurance policy into a guarantee of performance by the insured. The facts are not seriously in question. We're aware of the facts. So you're saying that what happened here was that USA Container had a job to do, and that was to deliver this corn syrup abroad in decent condition, and they failed to do so? Well, they were obligated, and they agreed to unload the corn syrup from tank cars into, I think it was 60-gallon drums. In order to do that... Okay, but that was the job they were to do. Correct. And purportedly, when it was loaded into those drums, it would be in the same condition that it was when they received it. Exactly. So they're a service provider. Yeah, it's not like they're a seller of goods, which is what most of the case law is. No, they were a manufacturer of goods. Right, so the work here was to perform that service. Correct. So why, I was surprised, I don't recall either side suggesting that we certify the question of the New Jersey Supreme Court. There are precious few cases, if any, involving service providers, who are usually manufacturers or suppliers of goods. WEDO doesn't directly answer the question. Why shouldn't we certify this? Well, I don't think there is a significant distinction between the functions that were to be done by USA Container and its subcontractor versus somebody that's actually hanging drywall or anything else. All right, so how is it clear that the New Jersey case law would dictate a result in your favor? Well, the principle that was enunciated in WEDO in 1979 was that the business risk associated with bad performance is not covered by the CGL policy. And the same rationale extends to a different version of the CGL policy. But the language is still the same, and WEDO is still the same, and the cases that have been decided since the change in the policy have followed WEDO consistently. But the subsequent amendment to the model policy treats subcontractors differently, and here there was a subcontractor. But that doesn't affect what is meant by your work under the policy. You're saying that that has to do with an exclusion, and here we're talking about an occurrence, correct? Exactly. And that exclusion is what the USA throughout argued extended coverage, which it never did, and this Court rejected that. Their theory was that because of that exception to the exclusion, it created coverage, when in fact all it did was restrict the application of the exclusion. It certainly did not provide any coverage. But the format of the policy remained exactly the same, that your work is not covered under the policy. Damage to third parties, if your windows fall off and hit somebody in the head, that's what they were designed to cover. Address the meaning of this concept. Foldy workmanship that causes property damage to property not manufactured or provided by the insured is an occurrence. Correct. Whereas foldy workmanship that causes damage to the property that's the subject of the contract itself. Correct. Would not be covered, correct? That's the WEDO mantra of a CGL policy. Okay, and how does that apply here? Well, because what happened here was they failed to follow the SOPs, which were given to them, which spelled out how the corn syrup was to be unloaded. It was to be heated to 120 degrees. Okay, so the property damage here occurred to the subject of the contract. Yes. Not to property of another. Here it's confusing because technically it was property of another, i.e., it wasn't U.S. containment property, but it still was part of the work. That's what you would contend, I assume. Yes. I mean, I don't think there's any question about that. The damage occurred by virtue of the subcontractor's failure to adhere to the SOPs. That was their job was to adhere to the SOPs and unload the corn syrup. They didn't do it correctly, and if you analogize it to a lawyer doing something negligent or improper in terms of his services, then that's why we have malpractice insurance because a CGL policy does not cover it. So you would say this is transforming it into a performance bond, in essence? More likely a guarantee of performance or a warranty. A performance bond is something that's somewhat different in the context of construction, but here what they're saying is that, or what the district court said, was that the policy is a guarantee of the performance of the insured, and that's simply not what it was designed to do. There have been two recent cases, relatively recent cases, by the New Jersey courts, which reaffirmed that. Which courts? The appellate division, but not the Supreme. So why not certify? I'm not sure you answered that question. Well, because the law has not changed. In 1979, the Supreme Court set forth its view of the issue, and in the ensuing years, the appellate division and trial courts have repeatedly You're talking about WIDO. Yes. But is WIDO really on point? I mean, WIDO's focus was having to do with exclusions, not what is an occurrence. Originally that was the WIDO decision, but subsequent courts have extended the WIDO. Intermediate appellate courts. Yes. So the law has changed. It's evolved since WIDO. I'm not sure that the law has evolved. I think that it has just been expanded upon. That WIDO stood for the proposition that the policy does not cover faulty workmanship, but rather damages which flow from faulty workmanship. In Hillside Beverage, Hillside Bottling Company, the appellate division dealt with a case very similar to this one, and it reaffirmed the WIDO proposition that there is simply not a – there is no coverage under a CGL policy for what is essentially a breach of a contract. Could you – I'm sorry. I was going to say, I'm going to move to another area. If we were to find nonetheless that the district court was right, what about the damages here? Well, first of all, you have the issue of the contingency which USA entered into with Maloney with respect to, well, if you recover some money from the insurance company, you're going to have to split it. The insurance was not designed to cover contingencies such as that. So your argument was USA container is out $425,000, and that's what insurance would pay. Correct. With respect to prejudgment interest, the court dated the prejudgment interest from the date of denial. There's a lot of deference, though, to a court's determination of what date. I'm sorry? There's a lot of deference that we give to a district court's determination of what date should be the time for running a prejudgment interest. I agree. However, in this case, there was no payment by USA until substantially past the denial. And then when it didn't make payments, the substantial portion of what it paid to Maloney was over a period of 11 months or longer. I forget exactly how long. But in our brief, we set forth what the schedule of payments were. But the district court assessed interest going back to the date of denial long before Maloney made any payments. And that's fundamentally unfair. I see I'm at the three-minute mark, so if I may. All right. Thank you very much. We'll hear from you on rebuttal. Good morning, Your Honors. Shalom Stone for the respondent, USA Container. I want to make a few points about occurrence and what it means. First point I want to make is even if we accept WIDO or applicable somehow to the current policy, which I think we all know it's not, even WIDO recognizes that there are certain types of damage to property that are covered, and that is damage to property of others. But there's very little case law out there on what others means. Yeah, but others, what that means is there's faulty workmanship that gives rise to something else. Here don't we have faulty workmanship in the fact that the work to be performed by USA Container was to load this corn syrup into bins, presumably in the same condition that it received it. I mean, this is, as Judge Hardiman noted, this is a little bit of a different case. This is a service provider. That's right. I'm going to give you two examples, if I may, from New Jersey appellate decisions that would say that damage to the property of the counterpart of the contract is not damage, is damage that is covered. That would be ACCUPAC, which is the lotion case, and Hillside Bottling. In ACCUPAC, the court held that there is coverage for damage to Revlon's property, and that includes the lotion that Revlon provided to ACCUPAC. The transfer of the lotion into the packets. Where is ACCUPAC in your brief? The decision citation is 328 NJ Super. And where is Hillside Bottling in your brief? Are they in there? Yes. Both cases are in the brief, Your Honor. All right. I just didn't see it. And so the transfer of the lotion into the packets is similar to the transfer of the syrup into the drums, and the court held that there is coverage for damage to the lotion that was provided to ACCUPAC by Revlon, the counterpart of the contract. Hillside is similar in that case. Were they a manufacturer, or were they to do anything with the lotion, or they were a transporter? Just moving the lotion into these packets. They're just putting it in the packets and sealing the packets. Let's talk about this case. You hire Pacific River, Passaic River. Passaic River. And they overcooked the corn syrup. Was there a written contract you had with them? No. There's no written contract. You hired them to do it, and you paid them? Yeah. And how much did you pay them? I don't know that number, Your Honor. And when they overcooked the corn syrup, you sued them for breach of contract? Yes. And how much did you recover? There's a default. Nothing was recovered. All right. But in the normal world, this is not an insurance case. This is a classic breach of contract case. You sue them for breach of contract, they pay you the damages, everybody goes home. It's not an insurance case. The only reason it's become an insurance case is because they're uncollectible. Because they didn't have insurance to cover it. The collectability is not what determines whether there's coverage, just like we don't look solely at these policy ideas to determine whether there's coverage. We should be looking at the language of the policy. I agree with you, which is why I'm engaging this line of questioning. The collectability shouldn't determine coverage. So, in other words, if they have been collectible, you're not asking your insurer to cover this. Isn't it a fact that the only reason the insurer is being asked to cover this is because the party at fault was uncollectible? Sometimes that collectability impacts on who you go to. No, I'm not saying in general. I'm saying in this particular case. Are you going to tell this court that you would get a full recovery from Passaic River, pocket that money, and you would insure it to cover your claim? Obviously, we're not entitled to a double recovery, Your Honor. Is your obligation to Maloney based on contract or tort? We have a contract with Maloney to perform. And you breached it, did you not? We failed to perform. Okay. That's contract liability, is it not? Correct. But New Jersey law makes clear that whether it's tort or contract doesn't impact whether there's coverage. No, the coverage is for tort liability for physical. I'm reading out a WIDO that's cited again in titanium. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained. Doesn't that clearly say that under New Jersey law? Subsequent cases have made very clear that contract-tort distinctions do not impact how we look at coverage because there are too many variables. What are those cases? You're getting back to it. I apologize. I don't have the citation for that in front of me, but there is a case. Well, that's really important. I'm happy to provide it. We have a 2014 New Jersey Superior Court case decided in September that cites, you know, as we have said, the risk of one's own faulty work is always borne by the party performing the work. The party's liability to others for its own faulty work is a matter of warranty, not a matter of insurance coverage. I mean, we've got this clearly stated. So if you have other authority, we need to know it. Well, there are clearly all of the cases are trying to figure out how do we handle WIDO when it dealt with a different policy. And it's a tough question, which is why we should certify it to the appropriate court to make the decision. We're not a state court. We're not experts on New Jersey law. Clearly, your job here is to try and predict what the court would do. So shouldn't we certify it? Well, that's an option, certainly. I know it's an option. I'm asking you for your considered judgment. You guys need to help us. I recognize that the court has the power under Rule 110 to move the certification to a sponte, and you don't need my help or permission. However, and there are certainly issues here that are difficult because none of the cases that we're dealing with are Supreme Court cases. We're dealing with a lot of appellate division case law that deals with a lot of disparate issues, including some recent ones, including East River, which we cited. And East River makes clear that the ground has changed in the ensuing 30 years. And because we have different policy provisions, I'm sure your Honor saw the quote from East River we have in the brief. At East Coast, it's a very different ground that we're treading on right now. And East Coast makes clear that because we have pre-'86 and post-'86, the court specifically says we're not sure how WIDO impacts this exclusion. I guess you're not sure either. We should be sure. No, but being sure is not the requirement. You don't have to be sure. You have to predict. You have to predict. And I believe that given what all the states have done, given in the 30 years since WIDO, I think it's not a difficult job to predict what New Jersey would do. I mean, look at what the Florida Supreme Court said in JSOB. The court said we look there instead of Pennsylvania, other than the fact that that favors your adversary. I understand that, Your Honor. But we're not going to go to Florida for help if we can look to Pennsylvania or Delaware. I don't think Pennsylvania law is any great predictor of New Jersey law. But Florida is. It's not Florida. As you know from our brief, we recited dozens of states who said WIDO should not be followed when we're dealing with an 86 policy. Dozens of states have said it. In fact, Pennsylvania is now the same minority. There's almost no case law out there that, I mean, you're really asking us to move into this realm out of tort law into contract law that seems a little bit risky, isn't it? It's a contract. This is an insurance policy. It's a contract. And we should be interpreting the contract like we do any other contract. And one of the things that Judge Lunaris said in footnote five is we don't look at different pieces of the policy to interpret other pieces. And he's wrong. The appellate division said in Josephson an insurance contract must be interpreted by considering the agreement as a whole. And as a result in Josephson they said we are going to understand the environmental injury provisions and the personal injury provisions by looking at them together. And we can't allow coverage under the personal injury provision if we have this pollution exclusion out there. We have to look at them together. The court did the same thing in Hillside Bottlers, not in the portion of the case we've been talking about, but later in that opinion where they're talking about the product recall endorsement. The court said if product recalls were covered by the general provisions, there would be no need for a product recall endorsement. So if the insurer is going to offer a product recall endorsement, that's got to be relevant to how we look at the rest of the policy. The court in Josephson is very clear. Judge Lunaris got footnote five wrong. We have to look at the whole policy. And exclusion L, which travelers does not want to hear about, makes it very clear that there is coverage for the kinds of work that's at issue in this case. Other courts have said so expressly. You're excising out service providers from the whole equation here. By definition, service providers can't damage their own product because they don't have a product. Well, most construction companies today don't do their own work either. They work off subcontractors. But that's still their obligation. Their obligation is to the person they're contracting with. And the fact they sub it out, they still have to perform the work. Of course, but they are entitled to insurance coverage. And exclusion L makes very clear that the contracting party is entitled to coverage for damage caused by their subcontractor. That's what exclusion L is there for. The exception to exclusion L is there for. And that's why all the courts that have looked at this have said we have to use exclusion L to understand what the coverage is. If there is no coverage for property damage to work performed by USA and its subs, then what's the purpose of exclusion L? But if your client had caused the damage, had failed to follow the SOP on heating the corn syrup, you'd concede there'd be no coverage? Well, the first argument I was making here was that this is damage to the property of Malooney. And under Hillside Bottlers and ACCUPAC, as long as the damage is to the property of the counterparty of the contract, whether it was Snapple in that case or Revlon in the lotion case. If you put ammonia into the corn syrup while you're processing it, that would be an occurrence under the policy for which there'd be coverage? Well, look at exactly what happened in Hillside Bottlers. Right. That's why I asked that question. But it is to property not covered by the contract. In other words, in ACCUPAC, it went beyond the performance of the work. In other words, it hurt something else that wasn't part of the contract. It hurt the lotion. Yeah. One of the things the court says is we're covering the lotion. Well, I'm looking now at page 25, yeah. The business risk applies regarding claims for damage to the insured's own work arising out of his faulty workmanship. Does not exclude damage to the property not manufactured or provided. What happened was the poor workmanship in fabricating the packets of skin cream and lotion then leaked onto the advertising cards, and they were damaged. I'm not talking about the cards. One of the things the court says is in addition to the cards being covered, the lotion itself is now covered. So all the lotion became unusable because it was in the packets and they couldn't use it anymore. And the court says the lotion is covered, and it remands for determination of the normal issues in the policy. But the court says in theory the lotion is covered. The lotion belonged to Revlon, even though it was lotion that ACCUPAC was working with. So to answer Judge Vineski's question, I think there are arguments that even the way you pose the question, there is still coverage for damage to the property of others under New Jersey precedent. I'm running short on time. I want to make one last point. When the policy changed in 1986 and the idea was to take some of the ideas in WIDO and put them in the policy, but they don't go in the policy as definition of occurrence or accident. They go in the policy as exclusions. What we see in this case and in other policies, in other cases, exclusion J, K, L, and M. And when service providers and manufacturers, construction companies go out and buy that 86 form, buy that 86 policy, they expect to get covered subject to those exclusions. To turn around and say we're not going to provide coverage because 30 years ago in the WIDO decision, we had these ideas about business risk exclusion, well, those are now in the policy. But isn't the one exclusion that is pointed to the repair or replace, doesn't that almost say that that's the kind of thing that isn't covered? If something needs to be repaired or replaced. Now, it happened as a factual matter here. Technically, that's not what happened, but guess what? Really, stuff would have to be repaired or replaced because it was ruined.  At least it was not restored, repaired, or replaced. I know, but it was delivered in a defective manner so that technically it needed to be replaced. The policy doesn't say there's no coverage for rejected materials. It doesn't say there's no coverage for returned materials. And we have to look at the language of the policy. If the carrier wants to put an exclusion for property that's returned or for property that's rejected, they can do that, but that's not how the policy reads. The policy says restored, repaired, or replaced. Could you address the issue of damages here? I'm having difficulty figuring out why there's more than $425,000 at issue here because that's all that was paid. Okay, so let's deal with one issue first. Travelers is focusing on this legally obligated to pay idea. And that arises under the policy itself, and that obligation is forfeit. Under New Jersey law, fireman's fund versus security insurance, a Supreme Court case from 1976, if the carrier refuses to cover, and your question is relevant only if there is coverage here, if the carrier wrongfully refuses to cover, the provisions in the policy dealing with settlement like control and like legally obligated to pay, those are forfeit. The only requirements that remain are that the settlement must be reasonable and in good faith,  So the only issue is whether the number is reasonable. Under the settlement agreement, is there any obligation on the part of USA Container to pay Maluni anything more than $425,000? But legally obligated to pay isn't the standard. It's reasonableness and good faith. Legally obligated to pay is... No, reasonable and good faith of what? Of the settlement. What is the settlement? The settlement is for $425,000 plus a percentage of what's recovered from the carrier. It's no different than the assignment cases, Your Honor. The cases have been assigned. The Supreme Court of New Jersey approved the complete assignment with no damages paid in breaks. There are lots of cases where little or nothing is paid by the insured... All right, but what's going to be recovered from the carrier is only the $425,000 because that's all that was paid. I mean, if the settlement agreement read something different, that, you know, we're settling for $700,000, but, you know, we will... That's what it says. It says we're settling for up to $725,000. No, that's a cap, but... No, the settlement amount, what you pay is $425,000, correct? Yes, but that's not what the settlement agreement says. The settlement agreement says... You're saying your client... But for the kicker, your client doesn't sign that agreement. Of course... Well, I don't think... The agreement on the other side doesn't... The other side doesn't... The agreement doesn't get done. You can't cut a deal with Maluni... We've never made this deal for $425,000. And the fact that the payment is conditional is no different than all of the assignment cases that the Supreme Court has approved of. But it doesn't say you're settling for $700,000, but if you haven't recovered within two years, they'll reduce it. The settlement is $425,000. We could have settled just by writing on the settlement agreement $732,000, handed that over to Maluni, and let Maluni pursue the carrier without paying them anything. But the agreement doesn't say $732,000. It does say $732,000. No, it says that's a cap. Okay, so it's a cap. It's not an obligation. We're obligated to pay them half of what we recover, up to $732,000. That's an obligation. It's a conditional obligation, but it's an obligation. And their damages... I thought the first case was the only case we'd be talking about conditional issues. There's more than one issue. Let me ask you about ACCUPAC, because I'm still not convinced that it's as helpful to you as you say. In ACCUPAC, I guess this is at pages 50 and 51, it buttresses the principle for WIDO that accidents of faulty workmanship lead to breach of contract claims, while faulty workmanship that caused an accident leads to tort claims. So ACCUPAC seems to vindicate the tort-contract distinction established in WIDO. And I apologize to the Court for not having that citation in front of me. There is New Jersey law that says we no longer follow the contract-tort distinction. It's not a Supreme Court case. We need that. I understand that, and that's on me. Will you please send a supplemental letter? Of course, Judge. And you can respond to it, Counsel, within five days, please. Actually, within two days, we'd like to have it. I will send it tomorrow. If there are any further questions? Nothing further. Thank you. Thank you, Your Honor. If I may, I'm not sure exactly how USA can logically argue that an exclusion provides coverage. Exclusion L stands for the exclusion of certain property damage, but gives an exception for damage caused by a subcontractor. Exclusion J6, however, which is still part of the policy. Counsel, I'm sorry, but you have limited time. Could you address ACCUPAC and Hillside Bottling and tell me how they help you and not your colleague? Well, if Your Honor, Will and Titanium Industries, which you mentioned before, they cite to ACCUPAC for the principle that we have also noted the critical distinction between insurance coverage for tort liability for physical damages to other persons or property and protection from contractual liability of the insured for economic loss caused by improper workmanship. So ACCUPAC does not stand for the principles that counsel argued. It stands entirely different. ACCUPAC was a case where there was additional property beyond the insured's work that caused damage. In Hillside Bottling, the court found that there was no coverage for Hillside because even though they got part of the materials from both Breyers and Snapple, it was their work that caused the damage. In fact, the court specifically said, here the motion judge erred by focusing on the fact that Breyers and Snapple incurred costs when they recalled the products rather than, as they should have, on the fact that Hillside created a contaminated product. By considering the damage to Breyers and Snapple, he overlooked entirely that this claim arising as it did from Hillside's work or its product was not covered regardless of the extent of the cost of the recall. That is to say, the motion judge analyzed the claim against the policy as if Hillside had damaged its customers and as if the customers had made third-party claims rather than recognizing that it was Hillside's own product and its own work that caused the recall. Even if the judge had been correct in his finding that Hillside only performed a service for Breyers and Snapple, it was the performance of that service that created the contaminated beverages as a result of which this claim arises. Viewed in either light, the business risk exclusion applied. Now, counsel says, and I have no idea what case he's talking about, that somehow WETA was no longer the law of the state of New Jersey. Titanium industries, as Your Honor mentioned, was decided in September of last year. It relied on WETA and it stands for the same proposition. It was a case where the insurer took titanium, bought it from a supplier, and passed it on to a company called BioMet to make screws. The screws turned out to be defective because the titanium was defective. Even though titanium was merely a pass-through of the titanium industries, the court found that there was no coverage because it was their work to provide titanium that was serviceable for the intended purpose. You sued them for the bad titanium. I'm sorry? At the bottom line, you sued them for the bad titanium. Correct, which is what happened because titanium industries sued their supplier and reached some kind of settlement with respect to it. So that, you know, he has taken cases which don't stand for the proposition and blurred the lines because the law has been clear since 1979. There's no coverage for this type of event, whether it's a product or a service. All right. It's the insurer's work. All right. We'll take it under advisement. Thank you very much. If we could see counsel at sidebar here. Approach the bench, please. And cut them out.